1   Cynthia L. Jackson  (Bar No. 92340)
    Michael N. Westheimer  (Bar No. 178938)
2   **BAKER & McKENZIE LLP**
    660 Hansen Way
3   Palo Alto, CA  94304-1044
    Telephone: +1 650 856 2400
4   Facsimile:  +1 650 856 9299
    Email:    cynthia.l.jackson@bakernet.com
5             michael.westheimer@bakernet.com

6   Attorneys for Seagate Technology LLC

7

8                  UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10                    SAN JOSE DIVISION

11

12  IN RE APPLICATION OF HANS-DIETER        Case No.  5:08-mc-80009-JW (HRL)
    BLASER FOR JUDICIAL ASSISTANCE
13  PURSUANT TO 28 U.S.C. SECTION 1782      **SEAGATE TECHNOLOGY LLC'S
                                            MEMORANDUM OF POINTS AND
14                                          AUTHORITIES IN OPPOSITION TO
                                            HANS-DIETER BLASER'S MOTION
15                                          FOR JUDICIAL ASSISTANCE
                                            PURSUANT TO 28 U.S.C. SECTION
16                                          1782**

17                                          Hearing Date:    July 1, 2008
                                            Time:            10:00 a.m.
18                                          Courtroom:       2
                                            Judge:           Hon. Howard R. Lloyd
19

20

21

22

23

24

25

26

27

28

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

PALDMS/362729.1

Case No 5:08-mc-80009-JW (HRL)
SEAGATE LLC'S MEMO OF P&A IN OPPOSITION TO MOTION FOR JUDICIAL ASSISTANCE

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................... 1

II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY.............................. 2

    A.      Mr. Blaser's Assertions in His Moving Papers.......................................... 2

    B.      The Nature of Mr. Blaser's Proceeding in Labor Court Munich................. 4

    C.      Procedural History of Mr. Blaser's Miscellaneous Action in this Court..... 5

III.    ARGUMENT ........................................................................................................ 7

    A.      Statutory Basis for Mr. Blaser's Application Under Section 1782 as
        "Interested Person" ................................................................................. 7

    B.      The Court Lacks Authority to Grant Mr. Blaser's Motion Under Section 1782
        Because the Discovery He Seeks is Not "For Use" in a Foreign Tribunal................ 9

    C.      The Court Should Deny Motion in its Discretion Based on the Intel Corp.
        Factors................................................................................................ 12

        1.      Mr. Blaser's Motion Should be Denied Because the Discovery He
            Seeks is Irrelevant to His German Action, Contrary to the Character of
            that Proceeding, and Inconsistent with the Nature of the Foreign
            Tribunal.................................................................................... 13

        2.      Mr. Blaser's Motion Should be Denied Because It is Violates U.S. and
            Foreign Proof-gathering Restrictions, and Would be Unduly
            Burdensome and Intrusive ........................................................... 14

    D.      The Court Should Deny Blaser's Motion Because the Documents He Seeks
        are Privileged and Shielded from Disclosure............................................ 15

        1.      The Documents are Protected from Disclosure Under the Mediation
            Confidentiality Privilege............................................................. 15

        2.      The Documents are Protected from Disclosure Under the Self-Critical
            Analysis Privilege ..................................................................... 16

IV.     CONCLUSION.................................................................................................... 18

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA  94304
+1 650 856 2400

Case No C-08-80009 MISC PJH (EMC)
Pleading template

1

## TABLE OF AUTHORITIES

2

**Page**

3

### CASES

4   Advanced Micro Devices, Inc. v. Intel Corp., (9th Cir. 2002) 292 F.3d 664 .................................... 12

5   Coates v. Johnson & Johnson, (7th Cir. 1985) 756 F.2d 524, 551 ...................................................... 16

    Dowling v. American Hawaii Cruises, Inc., (9th Cir. 1992) 971 F.2d 423, 426 ............................. 17

6   Folb v. Motion Picture Indus. Pension & Health Plans, (C.D. Cal. 1998) 16 F. Supp.
7       2d 1164, 1180 ........................................................................................................................ 16

    Granger v. National R.R. Passenger Corp., (E.D. Pa. 1987) 116 F.R.D. 507, 509 ...................... 16

8   In re Application of Microsoft Corp., F. Supp. (S.D. N.Y. 2006) 2d 188, 196 ............................... 15

9   In re Application of Microsoft Corporation, (N.D. Cal., March 29, 2006) 2006 U.S.
        Dist. LEXIS 24870 ................................................................................................................ 13

10  In re Letters of Request to Examine Witnesses From the Court of the Queen's Bench
11      for Manitoba, Canada, 59 F.R.D. 625 (9th Cir. 1973) (N.D. Cal.) aff'd per curiam
        488 F.2d 511 .......................................................................................................................... 10

12  In re Letters Rogatory from the Tokyo District, Tokyo, (9th Cir. 1976) 539 F.3d
        1216, 1219 ............................................................................................................................ 10

13  In re LTV Sec. Litig., (N.D. Tex. 1981) 89 F.R.D. 595, 619 ............................................................ 17

14  In re Request for Judicial Assistance from the Seoul District Criminal Court, (N.D.
        Cal. 1977) 428 F. Supp. 109, 113 ....................................................................................... 11

15  Intel Corp. v. Advanced Micro Devices, Inc., (2004) 542 U.S. 241, 124 S. Ct. 2466,
16      159 L. Ed. 2d 355 .......................................................................................... 8, 11, 12, 14, 15

    Kang v. Noro-Moseley Partners, (11th Cir. 2007) 246 Fed. Appx. 662, 664 .............................. 14

17  Metallgesllschaft AG v. Hodoapp, (2d. Cir. 1997) 121 F.3d 77 .................................................... 12

18  O'Connor v. Chrysler Corp., (D. Mass. 1980) 86 F.R.D. 211, 217-218 ....................................... 16

19  Ont. Forest Indus. Assoc. v. United States, (Ct. Int'l Trade 2006) 444 F. Supp. 2d
        1309, 1327 ............................................................................................................................ 13

20  Societe Nationale Industrielle Aerospatiale v. United States District Court for
21      Southern District of Iowa, (1987) 482 U.S. 522, 560, 107 S. Ct. 2542, 96 L. Ed.
        2d 461 .................................................................................................................................... 13

22  Trammel v. United States, (1980) 445 U.S. 40, 50-51, 1200 S.Ct. 906, 63 L.Ed.2d
        186 ......................................................................................................................................... 15

23  United Kingdom v. United States, (11th Cir. 2001) 238 F.3d 1312, 1319 ..................................... 12

24

### STATUTES

25  28 U.S.C. § 1782(a) ...................................................................................................... 8, 12, 15

    28 U.S.C. § 652(d) .............................................................................................................. 16

26  Fed. R. Evid. 408 ................................................................................................................ 16

27  Fed. R. Evid. 501 ................................................................................................................ 15

28

Baker & McKenzie LLP
660 Hansen Way
Palo Alto, CA 94304
+1 650 856 2400

Case No C-08-80009 MISC PJH (EMC)
Pleading template

1

## TABLE OF AUTHORITIES
### (continued)

2

**Page**

3

### OTHER AUTHORITIES

4

David P. Leonard, *Codifying a Privilege for Self-Critical Analysis*, 25 Harv. J. on Legis. 113, 120-21 (1988).......................................................................................... 17

5

*The Privilege of Self-Critical Analysis*, 96 Harv. L. Rev. 1083, 1086, 1091-92 (1983).............. 17, 18

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Seagate Technology LLC ( "Seagate LLC") opposes Hans-Dieter Blaser's motion for judicial assistance pursuant to 28 U.S.C. Section 1782 ( "Section 1782"), in which Mr. Blaser applies to this Court for authorization to subpoena numerous documents in this jurisdiction that he alleges are "for use" in a wrongful termination action he is pursuing in Labor Court Munich in Germany against his former employer, Seagate Technology GmbH ("Seagate GmbH").  Mr. Blaser's motion is unfounded and should be denied.  Mr. Blaser fails to meet his burden of proving that this Court is authorized to grant his motion under Section 1782.  Even if the Court were authorized, moreover, Mr. Blaser fails to meet his burden of establishing that the Court should grant his motion in its discretion.  The documents described in Mr. Blaser's moving papers are wholly irrelevant to his German action, and are privileged.

Tellingly, Mr. Blaser has deliberately bypassed the German court throughout his proceeding in this Court.  He makes several misleading (and arguably false) statements in his moving papers suggesting that the German court is aware of this proceeding and purportedly has endorsed it.   This plainly is untrue.  Mr. Blaser has not apprised the German court of this U.S. action, and the German court never "indicated" that it would consider any of the documents he seeks.  Despite having several procedural mechanisms for involving the German court, Mr. Blaser declined to use any of them, and as a result, German court is most likely unaware of his proceeding in this Court.  Presumably Mr. Blaser is circumventing the German court because he is fully aware that the documents he seeks are irrelevant to his German action, and are not usable in that forum.[1]

Mr. Blaser's motion should be denied for several reasons.  Initially, the documents Mr. Blaser seeks in this Court are not "for use" in a foreign tribunal (a jurisdictional prerequisite under Section 1782).  Even if Mr. Blaser could convince the Court that he need only show that the documents he seeks are "not unrelated" to his German action (a nebulous argument asserted in his

---

[1]  Mr. Blaser also attempted to avoid scrutiny by filing this action with the Court on an *ex parte* basis, without providing any notice to anyone.  After the Court ordered Mr. Blaser to provide notice of his motion, he purported to serve an entity that does not exist ("Seagate Technology, Inc.") and refused to serve the party to the underlying litigation that the Court had ordered him to serve – Seagate GmbH.  Seagate LLC subsequently learned of this proceeding and appeared in this action, and Mr. Blaser then served notice of the proceeding on Seagate LLC after the fact.

1  moving papers that Seagate LLC disputes), the Court should still deny his motion in its discretion

2  because the documents he seeks are irrelevant to the German action.  The sparse and equivocal

3  statement by Mr. Blaser's German counsel Lutz Schorler purporting to describe the action in Labor

4  Court Munich lacks evidentiary value, and is belied by the record.  Seagate LLC respectfully refers

5  the Court to the declaration of Seagate LLC's German counsel Mark Zimmer, filed herewith, for a

6  detailed and accurate description of the nature of Mr. Blaser's German action.  The discovery fishing

7  expedition that Mr. Blaser wishes to embark upon (as described in the proposed order lodged with

8  his moving papers) is contrary to the nature of the German tribunal, and the documents he seek to

9  subpoena would not be considered in that forum.

10      Furthermore, the moving papers demonstrate on their face that the document Mr. Blaser

11  describes are privileged.  Mr. Schorler's declaration – although not based on personal knowledge

12  and laden with inadmissible hearsay – at least shows that Mr. Blaser's motion is based entirely on

13  what allegedly occurred at a confidential mediation in the U.K. (involving different parties and

14  occurring outside the presence of Mr. Blaser and his counsel).  Whatever transpired at that mediation

15  cannot be used as a basis for seeking relief in this Court due to the mediation confidentiality

16  privilege, as well as this Court's express policy of protecting the sanctity of mediations.  In addition,

17  Mr. Blaser's moving papers further show that the documents he describes are a privileged self-

18  critical analysis that is similarly shielded from discovery.

19      Each of the above grounds is an independent basis for denying Mr. Blaser's motion.  Seagate

20  LLC's opposition is based on this opposition brief, the supporting declarations of Mark Zimmer and

21  Michael Westheimer, the evidentiary objections to the declaration of Lutz Schorler, the compendium

22  of case authority lodged herewith, the papers on file with the Court in this action, and on such other

23  evidence as may be presented at or prior to the hearing.  For each of the reasons set forth herein, Mr.

24  Blaser's motion should be denied.

25      ## II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

26  ### A.    Mr. Blaser's Assertions in His Moving Papers

27      The sole evidentiary support for Mr. Blaser's motion is a declaration submitted by his

28  German counsel Lutz Schorler, who represents him in Labor Court Munich.  Mr. Schorler's

declaration is mostly written in the passive tense to obfuscate his lack of personal knowledge of its contents. *See* Evidentiary Objections filed herewith. As for the substance of the declaration, Mr. Schorler makes a series of inadmissible statements (nearly all of which lack foundation and are not based on personal knowledge, and many are stated "upon information and belief"), asserting that:

- Mr. Blaser was previously employed with Seagate GmbH, a German subsidiary of a company alternatively referred to in his papers (each time erroneously) as "Seagate Technology, Inc.", "Seagate Technology", and "Seagate." *See* Schorler Decl., ¶ 2, 5, 11, 13, 16, 18, 22; *see also* Docket # 9.

- Mr. Blaser, and three others who were employed with a *separate U.K. subsidiary*, all allegedly were terminated for alleged violations of U.S. trade embargo regulations against Iran. *See* Schorler Decl. ¶ 7-9.

- Mr. Blaser is pursuing a wrongful termination action against Seagate GmbH in Labor Court Munich in Germany, filed on July 5, 2007. *See* Schorler Decl. ¶ 2,18, Exh. A.

- During a mediation in the U.K. of a separate dispute one of the other employees, Alastair Stewart, against his former employer (the *U.K. subsidiary*), Mr. Stewart allegedly was shown a document that is nebulously characterized as a redacted version of a report filed with a U.S. government agency reporting violations of boycott regulations relating to Iran. *See* Schorler Decl. ¶ 10-11.[2]

- The above document has never been disclosed to Mr. Blaser, nor Mr. Schorler, nor any employees outside the U.K. mediation (and Mr. Schorler declares only that Mr. Blaser allegedly "heard about" its existence). *See* Schorler Decl. ¶ 14-16.

- In his motion to this Court, Mr. Blaser seeks to discover the above document because the report purportedly is related to his German action. *See* Schorler Decl., ¶ 17-22 (assertions limited to the "report" itself, with no attempt to support the much broader scope of documents sought in the proposed order). Although Mr. Schorler concedes the German court's procedural rules do not permit this, he nonetheless opines that

---

[2]  Mr. Blaser also asserts in his moving papers, without citation, that "such report had set forth the termination Blaser and the other employees as a sign of good will to avoid a prosecution of Seagate by the United States government." Blaser Memo of P&A, p. 1:19-21.

3

Mr. Blaser would be allowed to "introduce" the document in the German action (a statement that is contrary to the nature of the German proceeding and contradicted by Seagate GmbH's German counsel). *Id.*; *compare with* Zimmer Decl. ¶ 2-5 (the sought documents are irrelevant and would not be considered by the German court).

Mr. Blaser also makes a series of misstatements in his moving brief in an attempt to mislead this Court regarding the purported relevance of this proceeding to his German action.   Notably, his only proffered evidence is a single conjecture by his own attorney who opines that he believes he would be allowed under German rules of procedure to "introduce" the document in the German action.  Schorler Decl. ¶ 21.  In Mr. Blaser's moving brief, by contrast, he grossly exaggerates his attorney's equivocal speculation.  For example, Mr. Blaser repeatedly asserts that the German court has not "expressed any opposition" to his application to this Court.  Blaser Memo. of P&A , pp. 8:21-22, 9:12-13, 9:17-18.  This is misleading at best because Mr. Blaser had deliberately kept the German court in the dark about this proceeding and the German court is most likely unaware that he is pursuing it.  Zimmer Decl. ¶ 5.  Even more egregious, however, is Mr. Blaser's assertion that the German court has "indicated" it will receive evidence of the sought document.  Blaser Memo. of P&A, p. 8:21-22.  This is a false statement designed to mislead this Court.  The German court has never given any such indication whatsoever.  Zimmer Decl. ¶ 5.

**B.    The Nature of Mr. Blaser's Proceeding in Labor Court Munich**

Mr. Blaser's underlying action in Labor Court Munich is pending under Germany's civil law system, and the nature of the German tribunal is very different than the U.S. adversarial system.  The nature of Mr. Blaser's German action is very limited, and accordingly, German rules of procedure generally do not provide for discovery procedures.  Zimmer Decl., ¶ 2-3.  Here, Labor Court Munich is conducting an inquiry into the sufficiency of the evidentiary basis for Seagate GmbH's termination of Mr. Blaser's employment.  Zimmer Decl., ¶ 3.  Seagate GmbH has the burden of proof in the German action, in which the only issue is the validity of Mr. Blaser's dismissal.  *Id.* Seagate GmbH already has presented the charges and its supporting proof in that action (which does not include any report to a U.S. agency such as Mr. Blaser describes in his moving papers), Mr. Blaser already has presented his response, and the German court has already decided the immediate

Baker & McKenzie LLP
Palo Alto

4

Case No 5:08-mc-80009-JW (HRL)
SEAGATE LLC'S MEMO OF P&A IN OPPOSITION TO MOTION FOR JUDICIAL ASSISTANCE
PALDMS/362729.1

1    dismissal in the first instance. *Id.* The report that Mr. Blaser describes in his moving papers

2    (allegedly reporting after the fact that his employment had been terminated) has no bearing on his

3    German action. *Id.* If Mr. Blaser attempted to present such a report to the German court, it would

4    not be accepted because it is irrelevant to that proceeding. *Id.*

5         Although the German court generally does not permit discovery, there are limited exceptions

6    that Mr. Blaser could have pursued. Zimmer Decl. ¶ 4. Specifically, Sections 142-144 of the

7    German Code of Civil Procedure permit parties to ask the German court to order an opposing party

8    or a non-party to provide specific documents related to its claims or allegations. *Id.*[3] Mr. Blaser has

9    never applied to the German court to attempt to obtain any such report, presumably because he

10   knows the report is irrelevant and such a request would be denied. *Id.* Instead, chose to bypass the

11   German court (presumably because he understands that the documents are irrelevant and would not

12   be considered by the foreign tribunal). *Id.*

13   **C.    Procedural History of Mr. Blaser's Miscellaneous Action in this Court**

14        Mr. Blaser initiated this miscellaneous action on January 23, 2008 by filing an *ex parte*

15   "Application for Judicial Assistance" in this Court's San Francisco Division. Docket # 1-4. In his

16   application and supporting papers (memorandum of points and authorities, Schorler Decl. and

17   proposed order), Mr. Blaser asks the Court appoint his counsel, Paul Warner, as a commissioner of

18   the Court for purposes of issuing subpoenas purportedly in relation to his underlying wrongful

19   termination action in Germany. Although the application papers make various representations that

20   the German court does not oppose his application and has "indicated" it will receive the documents

21   into evidence (and the proposed order even refers to non-existent "letters rogatory"), all of those

22   statements are false or misleading. Mr. Blaser has never attempted to inform the German court of

23   this proceeding or seek the German court's involvement in any way, and the document he seeks is

24   irrelevant to the German action. Zimmer Decl. ¶ 2-5.

25        Further, although Mr. Blaser asserts in his moving n papers assert that the discovery sought is

26   "narrowly tailored," and Mr. Schorler declares that Mr. Blaser is seeking to introduce a single report

27   ―――――――――――――――――――
[3]  In addition, Section 1782 itself expressly provides for judicial assistance pursuant to a letter

28   rogatory or request made by a foreign tribunal. 28 U.S.C. § 1782(a). Mr. Blaser had several
     mechanisms available for involving the German court, and he chose to circumvent them.

in the German action, those statements also are false or misleading.  Mr. Blaser's proposed order reveals that he actually seeks to subpoena various alleged reports, *and* any and all documents that were relied upon in preparation of any such reports, *and in addition*, any and all communications or filings with the U.S. government concerning any such "documents and matter."

Mr. Blaser filed his application papers on an *ex parte* basis without providing any notice whatsoever to any other person or entity.

On January 28, 2008, the Court issued an Order re Supplemental Briefing.  Docket # 6.  The Court ruled that Mr. Blaser was not entitled to seek this on an *ex parte* basis, and ordered him either to file a supplemental brief if he contended otherwise, or to serve his papers on "all parties to the underlying litigation" (*i.e.*, Seagate GmbH) and file a proof of service to that effect.  *Id.*

Implicitly conceding the lack of any basis for pursuing his application on an *ex parte* basis, Mr. Blaser did not file any supplemental brief with the Court attempting to justify his actions.  Instead, on February 15, 2008, he filed a proof of service in which he purported to serve his application papers on "Seagate Technology, Inc." in Scotts Valley, California.  Docket # 9.  In fact, no such entity exists.  Westheimer Decl. ¶ 2.[4]  Mr. Blaser did not make any attempt to serve the party to his underlying litigation, as the Court ordered.

On March 7, 2008, Mr. Blaser's counsel filed a letter with the Court stating that he had been advised by the Court to serve his application papers on Seagate GmbH, and asked that this "request" be issued in the form of an order (despite the fact that the Court had expressly directed him to do that in its January 28, 2008 Order).  Docket # 10, *see also* Docket #6.  The March 7, 2008 letter that Mr. Blaser's counsel filed with the Court states at the bottom:

> cc:    Juergen R. Ostertag, Esq.
>        Seagate Technology

Docket # 10.  However, no such letter was received by any Seagate entity during the time-frame that Mr. Blaser filed it with the Court.  Westheimer Decl. ¶ 3.  In addition, Mr. Ostertag is not employed

---

[4]  Mr. Blaser's counsel conceded that he initially attempted to serve "Seagate Technology, Inc." through CT Corporation which refused to accept service, and his response was simply to arrange to have the documents delivered to what he believed was the address for that non-existent entity.  Westheimer Decl., ¶ 4.

Baker & McKenzie LLP
Palo Alto

PALDMS/362729.1

with and does not represent any Seagate entity, but instead is an attorney in New York who represents Mr. Blaser. *Id.*

On March 10, 2008, the Court issued an Order re Applicant's Motion to Reconsider. Docket # 11. The Court deemed Mr. Blaser's March 7, 2008 letter to be a motion to reconsider and/or clarify. *Id.* Although noting the prior Order expressly required Mr. Blaser to serve Seagate GmbH, the Court ruled on reconsideration that service on Seagate GmbH was not required. *Id.* The Court also credited Mr. Blaser's erroneous representation that he had effected service on "Seagate Technology, Inc." *Id.*

All of the foregoing events occurred without notice to any existing entity or person.[5]

On March 11, 2008, Seagate LLC (which had learned of Mr. Blaser's application) advised Mr. Blaser (through counsel) that he had not served any existing entity, and that if he intended to serve an entity in Scotts Valley, California, the intra-district venue was improper. Westheimer Decl. ¶ 3-4. On March 12, 2008, the parties filed a stipulation and administrative motion for intra-district transfer of venue to the correct division of this Court. Docket # 13-15. On March 17, 2008, the Court granted the intra-district transfer of venue. Docket # 16.

On March 24, 2008, Mr. Blaser served Seagate LLC with his motion papers. Docket # 18. On May 15, 2008, Mr. Blaser re-noticed his motion and re-filed his motion papers. Docket # 19-24.

### III.     ARGUMENT

**A.     Statutory Basis for Mr. Blaser's Application Under Section 1782 as "Interested Person"**

Section 1782 provides in pertinent part as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person

---

[5] If notice and opportunity to respond had been provided, the response would have been that Mr. Blaser's own authorities establish that the Court's initial order was correct, and Mr. Blaser should have been required to serve notice of this proceeding on the party to his underlying litigation. *In re Merck*, 197 F.R.D. 267, 271 (M.D. N.C. 2000) (see Mr. Blaser's Compendium, Exh. 2).

1    appointed by the court.  By virtue of his appointment, the person
2    appointed has power to administer any necessary oath and take the
     testimony or statement.  The order may prescribe the practice and
     procedure, which may be in whole or part the practice and
3    procedure of the foreign country or the international tribunal, for
     taking the testimony or statement or producing the document or
4    other thing.  To the extent that the order does not prescribe
     otherwise, the testimony or statement shall be taken, and the
5    document or other thing produced, in accordance with the Federal
     Rules of Civil Procedure.

6
     A person may not be compelled to give his testimony or statement
7    or to produce a document or other thing in violation of any legally
     applicable privilege.

8
9    28 U.S.C. § 1782(a).

10        Section 1782 provides that an order may be sought in this Court pursuant to: (1) a letter

11   rogatory issued, or a request made, by a foreign or international tribunal, or (2) an application of any

12   interested person.  *Id.*   This action is brought by Mr. Blaser solely as an "interested person," without

13   any authority or involvement of any foreign tribunal.  Mr. Blaser makes several statements in his

14   moving papers implying that his motion is brought at the direction of the German court (including

15   statements that the German court does not oppose his action and has "indicated" it will receive the

16   sought document into evidence, and reference to "letters rogatory" in the proposed order), but each

17   of those statements is false or misleading.  The German court has not issued any letters rogatory nor

18   made any request, has not given any indication that it would receive any document into evidence

19   sought in this action, and likely is completely unaware of the proceedings in this Court.  Zimmer

20   Decl. ¶ 4-5.

21        On the other hand, Mr. Blaser correctly asserts in his moving papers that his motion under

22   Section 1782 is to be determined under the framework set forth in the Supreme Court's opinion in

23   *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 124 S. Ct. 2466, 159 L. Ed. 2d 355

24   (2004) (hereafter "*Intel Corp.*"), and its progeny.  The moving papers correctly state that *Intel Corp.*

25   requires analysis of two issues: (1) whether Mr. Blaser has established that the Court is authorized to

26   grant his motion, and (2) if so, whether Mr. Blaser has established that the Court should do so in its

27   discretion.  Mr. Blaser has done neither, and his motion should be denied on either ground.

28   / / /

Baker & McKenzie LLP
Palo Alto

PALDMS/362729.1

**B.    The Court Lacks Authority to Grant Mr. Blaser's Motion Under Section 1782 Because the Discovery He Seeks is Not "For Use" in a Foreign Tribunal**

Mr. Blaser correctly cites Section 1782 as conferring authority on the Court to grant his motion only if: (1) the person from whom discovery is sought resides or is found in the district, (2) the discovery sought is "for use" in a proceeding in a foreign or international tribunal, and (3) the application to the Court is made by an interested person (or in circumstances not applicable here, by the foreign tribunal itself).

Here, the Court lacks authority to grant Mr. Blaser's motion because the discovery he seeks is not "for use" in his German action. His sole proffered evidence in support of that contention is a single argumentative, speculative statement by his German counsel who opines that he believes he would be allowed to "introduce" the alleged report in the German action. Schorler Decl. ¶ 21.[6] That vague, conclusory statement lacks evidentiary value, and is inadmissible. *See* Evidentiary Objections, No. 7. The German action is solely an inquiry into the evidentiary basis for Seagate GmbH's termination of Mr. Blaser's employment. Zimmer Decl. ¶ 2-3. Seagate GmbH has the burden of proof in the German action, in which the sole issue is the validity of the dismissal. *Id.* at ¶ 3. Seagate GmbH already has presented the charges and supporting proof to the German tribunal (which does not include any such report described in the moving papers) and Mr. Blaser already has submitted his response, and the German court already has decided the immediate dismissal in the first instance. *Id.* The document Mr. Blaser describes his moving papers (*i.e.,* a report to a U.S. agency allegedly describing his termination after-the-fact) is irrelevant to his German action, and would not be considered by the German court. *Id.* at ¶ 3-4.

In an attempt to convince the Court that his motion should be granted despite this obvious and fatal flaw, Mr. Blaser erroneously argues in his moving papers that the document he seeks need not be usable in the foreign tribunal (despite the express language in Section 1782 requiring that the documents must be "for use" in a foreign tribunal). Blaser Memo. of P&A, p. 5:20-6:6 (contending that a motion under Section 1782 may be granted even if the document sought is not usable in the

---

[6]  Mr. Schorler also limits his declaration to a single report, implicitly conceding that the other broad discovery described in the moving papers is not even arguably "for use" in the foreign tribunal.

9

1   foreign tribunal, so long as it is "not unrelated" to judicial or quasi-judicial controversies). This

2   counter-intuitive argument is legally unfounded, as none of the cases Mr. Blaser cites as purportedly

3   supporting that proposition so hold.

4         Mr. Blaser initially cites to *Intel Corp*, 542 U.S. at 261-62. In that portion of the opinion, the

5   Supreme Court considered whether a foreign tribunal might be offended if Section 1782 were

6   interpreted as permitting, but not requiring, judicial assistance in circumstances where there is a

7   foreign discoverability limitation. *Id.* The Supreme Court observed that a foreign tribunal might

8   limit discovery within its own domain, yet still be receptive to aid from U.S. federal courts. *Id.* The

9   Supreme Court held: "*When a foreign tribunal would readily accept relevant information discovered*

10  *in the United States, application of a foreign-discoverability rule would be senseless.*" *Id.* at 262

11  (emphasis added). The Supreme Court did not hold that a Section 1782 motion may be granted even

12  if the information is *not usable* in the foreign tribunal, as Mr. Blaser claims. Mr. Blaser's

13  interpretation is contrary to the Supreme Court's opinion (which assumes the foreign tribunal would

14  accept the information), as well as the verbiage in Section 1782 itself which provides that the

15  discovery sought must be "for use" in the foreign tribunal.

16        Mr. Blaser next cites *In re Letters Rogatory from the Tokyo District, Tokyo*, 539 F.3d 1216,

17  1219 (9th Cir. 1976) (the "*Tokyo*" case), which is inapposite. In the *Tokyo* case, the Ninth Circuit

18  considered a Section 1782 application pursuant to letters rogatory issued by Judge Tsuneyoshi Ishida

19  of the Tokyo District Court. *Id.* at 1217. The Tokyo court issued the letters rogatory at the request

20  of the district prosecutor who was investigating violations of Japanese tax laws and seeking

21  information "for use in completion of the investigation and in future trials." *Id.* at 1218. In

22  opposing the Section 1782 application, witnesses argued that the Tokyo court was not acting as an

23  adjudicatory body (at least in that instance), and cited *In re Letters of Request to Examine Witnesses*

24  *From the Court of the Queen's Bench for Manitoba, Canada*, 59 F.R.D. 625 (N.D. Cal.) *aff'd per*

25  *curiam* 488 F.2d 511 (9th Cir. 1973) (the "*Manitoba*" cases). *Id.* The Ninth Circuit rejected that

26  argument, observing that in the earlier *Manitoba* cases the letters rogatory had been presented by an

27  entity whose sole power was *to make recommendations to a non-judicial body*, and in that

28  circumstance that Section 1782 "was not intended to and does not authorize the United States courts

1   to compel testimony in behalf of foreign governmental bodies whose purpose is to conduct

2   investigations unrelated to judicial or quasi-judicial controversies." *Id*. at 1219 (quoting *Manitoba*

3   cases, 488 F.2d at 512, 59 F.R.D. at 627). In the *Tokyo* case, the Ninth Circuit held that the

4   *Manitoba* cases were "clearly distinguishable" because in the *Tokyo* case the investigation for which

5   the letters rogatory were issued by the Tokyo court did not appear to be unrelated to judicial or

6   quasi-judicial controversies. *Id*. at 1219. In factually distinguishing the *Manitoba* cases from the

7   *Tokyo* case, the Ninth Circuit did *not* hold that Section 1782 petitions may be granted whenever the

8   assistance is "not unrelated" to judicial or quasi-judicial controversies, as Mr. Blaser claims.

9          Mr. Blaser next cites *In re Request for Judicial Assistance from the Seoul District Criminal*

10  *Court*, 428 F. Supp. 109, 113 (N.D. Cal. 1977) (the "*Seoul*" case), which is similarly inapposite.

11  There, the Seoul District Criminal Court requested assistance under Section 1782 in procuring

12  financial records in California for a citizen of Korea who had been investigated by Korean

13  authorities for violations of Korea's foreign exchange laws and was arrested, convicted and

14  sentenced, and whose case was on appeal. *Id*. at 111. The citizen argued that his Korean conviction

15  deprived the trial court prosecutor of all jurisdiction in the case and removed whatever need he may

16  have had for the information. *Id*. at 112. The court disagreed. In a passage that Mr. Blaser quotes

17  out of context in his moving papers, the court pointed out that the fact that the information may not

18  be usable *in the court which issued the underlying warrant* is not dispositive. *Id*. (emphasis added).

19  The court then explained, in a passage that Mr. Blaser omitted from in his moving papers, that: "It is

20  sufficient for this court that the information is intended *for use in a judicial or quasi-judicial*

21  *controversy* and that the procedures followed comport with our notions of due process of law." *Id*.

22  (emphasis added). Contrary to Mr. Blaser's assertion, the *Seoul* case contradicts his position and

23  confirms that information sought in a Section 1782 motion must be "for use" in a foreign tribunal.

24         Tellingly, the *Tokyo* and *Seoul* cases are factually distinguishable from Mr. Blaser's action in

25  this Court. In both of those cases, the applications were brought pursuant to requests by *foreign*

26  *tribunals themselves* for use in judicial or quasi-judicial proceedings – specifically, as part of

27  criminal prosecutions. In that context, Section 1782 expressly provides that information "for use" in

28  a proceeding in a foreign tribunal expressly includes "criminal investigations conducted before

Baker & McKenzie LLP
Palo Alto

1    formal accusation." 28 U.SC. § 1782(a); *see also Intel Corp.*, 542 U.S. at 258-59 (citing to

2    legislative history of 1964 amendment of Section 1782 as authorizing assistance for use in

3    proceedings pending before investigative magistrates in foreign countries).  Here, by contrast, Mr.

4    Blaser's Section 1782 motion was *not* brought at the request of a foreign tribunal, but by Mr. Blaser

5    himself without any involvement or knowledge of the foreign tribunal.  The fact that the document

6    Mr. Blaser seeks is "not usable" in his German action deprives this Court of authority.  Mr. Blaser's

7    citations to inapposite cases in which foreign tribunals sought information in furtherance of criminal

8    investigations is unavailing.

9           Mr. Blaser also cites two cases, *Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664

10   (9th Cir. 2002), and *Metallgesllschaft AG v. Hodoapp*, 121 F.3d 77 (2d. Cir. 1997), for the same

11   proposition articulated in the Supreme Court's *Intel Corp.* opinion – that discovery may still be

12   sought under Section 1782 even if it might not be discoverable in the foreign tribunal.  This misses

13   the point.  None of Mr. Blaser's authorities support his contention that discovery may be sought

14   under Section 1782 that is *not usable* in the foreign tribunal because it is irrelevant.  The Court lacks

15   authority to grant Mr. Blaser's motion because the discovery sought is not for use in a foreign

16   tribunal, so his motion must be denied.

17   **C.    The Court Should Deny Motion in its Discretion Based on the *Intel Corp.* Factors**

18          Even if this Court had the authority to grant Mr. Blaser's motion under Section 1782, the

19   motion still should be denied in the Court's discretion.  A district court is not required to grant a

20   Section 1782 request for discovery "simply because it has the authority to do so."  *Intel Corp.,* 542

21   U.S. at 264.  Rather, the Court has discretion to grant or deny the motion; a district court's

22   compliance with a Section 1782 request "is not mandatory."  *United Kingdom v. United States*, 238

23   F.3d 1312, 1319 (11th Cir. 2001).

24          In *Intel Corp.*, the Supreme Court set forth a series of factors that the district should consider

25   in exercising its discretion in a Section 1782 request.  *Intel Corp*, 542 U.S. at 264 (setting forth

26   "factors that bear consideration in ruling on a §1782(a) request").  These factors include: (1) whether

27   evidence is sought from a nonparticipant in the matter arising abroad; (2) the nature of the foreign

28   tribunal; (3) the character of the proceedings underway abroad; (4) the receptivity of the foreign

12

court to U.S. court's judicial assistance; (5) whether the Section 1782(a) conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (6) whether the request is unduly burdensome or intrusive. *Id. at* 264-65 (collectively, the "*Intel Corp.* factors").

> **1.    Mr. Blaser's Motion Should be Denied Because the Discovery He Seeks is Irrelevant to His German Action, Contrary to the Character of that Proceeding, and Inconsistent with the Nature of the Foreign Tribunal**

This Court previously denied a Section 1782 motion in *In re Application of Microsoft Corporation*, 2006 U.S. Dist. LEXIS 24870 (N.D. Cal., March 29, 2006). There, the Court observed that the differences between the civil law systems of Europe and the common law system of the United States is a factor in favor of denying Section 782 request. *Id.* at *9. The Court described the differences in the "proof-gathering" procedures– *i.e.*, the civil law system's "inquisitional" process as opposed to the common law system's "adversarial" process for gathering evidence. *Id.* at *8-9 (citing *Societe Nationale Industrielle Aerospatiale v. United States District Court for Southern District of Iowa*, 482 U.S. 522, 560, 107 S. Ct. 2542, 96 L. Ed. 2d 461 (1987)). As Germany has adopted a civil law system of jurisprudence, the nature of German proceedings "are quite different than in the U.S. courts." *Id.* The Court also observed that, although the Supreme Court in *Intel Corp.* rejected any *categorical* foreign-discoverability rule, "it did indicate that foreign-discoverability may be considered by a court as a matter of comity in deciding whether to grant discovery in a particular matter." *Id.* at *8; *see also Ont. Forest Indus. Assoc. v. United States*, 444 F. Supp. 2d 1309, 1327 (Ct. Int'l Trade 2006) (Comity "recognizes that U.S. courts should restrain their own action so as not to needlessly undermine the rules and procedures of a foreign court, and that it is not the role of U.S. courts to interfere with foreign courts' abilities to create and enforce their own rules in the manner they see fit."). The further Court noted that attempts to circumvent the foreign court's proof-gathering restrictions is a "key consideration" determining whether to grant the request. *Id.* at *7. "Taken as a whole, these factors weigh against allowing the requested discovery in this case." *Id.* at *8.

Similar considerations are present here. Mr. Blaser is pursuing a very limited action in Germany's civil law system, which is inquisitional rather than adversarial. He seeks to embark on a

Baker & McKenzie LLP
Palo Alto

PALDMS/362729.1

1  U.S.-style fishing expedition that has no bearing on his German action, in which the sole issue is the

2  evidentiary basis for his termination which already has been presented to the German court.

3  Applying the *Intel Corp.* factors, Mr. Blaser's deliberate circumvention of the German court and

4  subterfuge in this Court warrant denial of his motion.

5      The reasons for denying Mr. Blaser's motion were succinctly articulated in a recent opinion,

6  *Kang v. Noro-Moseley Partners*, 246 Fed. Appx. 662, 664 (11th Cir. 2007). There, the court ruled

7  that, even though the person from whom the discovery sought was not a participant in the foreign

8  tribunal, "this factor was outweighed by the irrelevance of the requested discovery to the nature of

9  the foreign proceedings." *Id.* at 664. "A district court can deny discovery where the information

10 sought is irrelevant to the causes of action." *Id.* (district court properly considered the *Intel Corp.*

11 factors in exercising its discretion and did not abuse its discretion in determining relevance).

12     Mr. Blaser's motion should be denied for the same reason. His attempt to discover a report

13 that allegedly was issued after the fact is irrelevant to his Labor Court Munich's review of the

14 evidentiary basis for his termination. *See* footnote 2, *supra*. His deliberate circumvention of the

15 German court, attempts to shield his motion from scrutiny, failure to support his motion with

16 competent evidence, and gross distortions in his moving papers all are implicit acknowledgments of

17 what the opposition evidence expressly establishes – the documents Mr. Blaser seeks in this Court

18 are irrelevant to his German action and would not be considered by the German court. *See* Zimmer

19 Decl., ¶ 2-5.

20     **2.    Mr. Blaser's Motion Should be Denied Because It is Violates U.S. and Foreign
             Proof-gathering Restrictions, and Would be Unduly Burdensome and Intrusive**

21

22     The broad scope of documents described in Mr. Blaser's motion (notwithstanding his own

23 counsel's declaration that is limited to a single report) reveals that he is seeking to embark on a

24 U.S.-style fishing expedition that is neither recognized nor welcomed by the foreign tribunal. In

25 light of the lack of relevance to the foreign proceeding, his motion should be denied as unduly

26 burdensome and intrusive. Moreover, whether a request is unduly burdensome and intrusive does

27 not depend solely on the number of documents or scope of subject matter that a Section 1782

28 moving party requests, although those considerations can be important factors. Courts also consider

what is requested and the consequences of production. *In re Application of Microsoft Corp.*, F.

Supp. 2d 188, 196 (S.D. N.Y. 2006) (finding that although request was for limited category of

documents, it was unduly intrusive and burdensome because it sought information that was protected

as confidential and privileged under U.S. law). Here, Mr. Blaser seeks discovery of a report that he

allegedly discovered as a result of a mediation between two different parties in another country, that

he alleges was generated after-the-fact as a sign of good will to avoid prosecution by the U.S.

government. Schorler Decl., ¶ 11, 14-16; *see also* footnote 2, *supra*. As further explained below,

any such report is privileged under U.S. law and need not be disclosed under the *Intel Corp.* factors

because the discovery violates U.S. and foreign proof-gathering restrictions and would be unduly

burdensome and intrusive.

The *Intel Corp.* factors weigh against Mr. Blaser's motion. Accordingly, even if the Court

determines that it has the authority to grant the motion, the Court nonetheless should deny the

motion in its discretion.

**D.  The Court Should Deny Blaser's Motion Because the Documents He Seeks are Privileged and Shielded from Disclosure**

Section 1782 expressly provides that: "A person may not be compelled to ... produce a

document or other thing in violation of any legally applicable privilege." 28 U.S.C. § 1782(a).

Mr. Blaser's discovery request is barred by privileges recognized under the federal common

law. Fed. R. Evid. 501; *Trammel v. United States*, 445 U.S. 40, 50-51, 1200 S.Ct. 906, 63 L.Ed.2d

186 (1980). Specifically, the moving papers demonstrate that Mr. Blaser's motion is barred by the

mediation confidentiality privilege, as well as by the self-critical analysis privilege.

**1.  The Documents are Protected from Disclosure Under the Mediation Confidentiality Privilege**

Mr. Blaser alleges in his moving papers that a report was shown to Mr. Stewart in a

mediation in the U.K. that has never been revealed to him, his counsel or any employees outside the

context of that mediation. Schorler Decl., ¶ 11, 14-16. The mediation confidentiality privilege bars

Mr. Blaser from using what allegedly transpired in that mediation as a basis (indeed, his sole basis)

for seeking relief in this Court.

Baker & McKenzie LLP
Palo Alto

1   The mediation confidentiality privilege is established under federal common law and in the

2   express public policy of this Court.  Federal statutes expressly require district courts to adopt rules to

3   protect mediation confidentiality.  28 U.S.C. § 652(d) (mandating that district courts adopt local

4   rules to provide for confidentiality of alternative dispute resolution processes and to prohibit

5   disclosure of confidential dispute resolution communications).  Accordingly, this Court has adopted

6   local rules which broadly protect mediation confidentiality and bar Mr. Blaser's motion.  Civil L.R.

7   6-11(a) (providing that anything that happened in connection with any mediation is confidential

8   information that cannot be used for any purpose in any proceeding in this Court).  Other federal

9   authorities are in accord.  *See, e.g.,* Fed. R. Evid. 408 (providing that conduct or statements made in

10  compromise negotiations are inadmissible); *Folb v. Motion Picture Indus. Pension & Health Plans*,

11  16 F. Supp. 2d 1164, 1180 (C.D. Cal. 1998) (holding that the mediation privilege applies to all

12  communications made in connection with mediation proceedings).   Mr. Blaser's attempt to pursue

13  this motion, based on inadmissible statements about what he allegedly heard had transpired at a

14  mediation involving other parties, is directly contrary to the mediation confidentiality privilege and

15  the Court's expressed public policy of preserving mediation confidentiality, and his motion should

16  be denied on that basis alone.

17  **2.    The Documents are Protected from Disclosure Under the Self-Critical Analysis
        Privilege**

18

19  Mr. Blaser's motion to discover the report described in his moving papers also is barred by

20  the self-critical analysis privilege established under federal common law.  "The policies underlying

21  the 'critical self analysis' doctrine are based upon the need to promote candid and forthright self-

22  evaluation." *Granger v. National R.R. Passenger Corp.*, 116 F.R.D. 507, 509 (E.D. Pa. 1987).  One

23  of the purposes of the doctrine is "to prevent a 'chilling' effect on self-analysis and self-evaluation"

24  that would result if such analyses were subjected to discovery.  *Id.*; *see also O'Connor v. Chrysler

25  Corp.*, 86 F.R.D. 211, 217-218 (D. Mass. 1980) ("the incentives for any institution to engage in

26  self-evaluative investigation pale considerably with the knowledge that the results may be used

27  against it").  Internal investigations to prevent or correct legal non-compliance serve the public

28  interest. *See Coates v. Johnson & Johnson,* 756 F.2d 524, 551 (7th Cir. 1985).  Not only do such

16

1    self-critical analyses promote observance of the law, they also shift the costs and burden of

2    investigation to private corporate citizens.  The self-critical analysis privilege exists to protect

3    companies that conduct internal investigations that further the public interest.  David P. Leonard,

4    *Codifying a Privilege for Self-Critical Analysis*, 25 Harv. J. on Legis. 113, 120-21 (1988).  For

5    example, in *In re LTV Sec. Litig.*, 89 F.R.D. 595, 619 (N.D. Tex. 1981), a company entered into a

6    consent decree with the U.S. Securities and Exchange Commission under which it agreed to self-

7    evaluate and self-correct alleged violations of securities laws.  *Id.* at 614.  Discovery of the

8    investigation was sought in a subsequent shareholder lawsuit, and was denied by the court based on

9    the self-critical analysis privilege.  "The court is persuaded that it is likely that corporations will be

10    less willing to engage in this sort of self-investigation if the results of such an investigation can be

11    discovered in parallel civil litigation." *Id.* at 619.

12        In *Dowling v. American Hawaii Cruises, Inc.*, 971 F.2d 423, 426 (9th Cir. 1992), the Ninth

13    Circuit articulated a four-part test for determining when the self-critical analysis privilege arises: (1)

14    the information sought to be protected must have been prepared with the expectation that it would be

15    kept confidential; (2) the information must be the result of a critical self-analysis undertake by the

16    party seeking protection; (3) there must be a "strong public interest in preserving the free flow of the

17    type of information sought," and (4) the information must be the type whose free flow would be

18    curtailed were discovery permitted. *Id.* at 426 (quoting *Note, The Privilege of Self-Critical Analysis*,

19    96 Harv. L. Rev. 1083, 1086 (1983)).[7]

20        Here, the four-part test articulated in *Dowling* is satisfied.  First, Mr. Schorler expressly

21    alleges in his declaration that the company has endeavored to preserve the confidentiality of the

22    report.  Schorler Decl., ¶ 14-16.  Second, the moving papers expressly allege that the described

23    report is a self-critical analysis of alleged regulatory violations.  Schorler Decl., ¶ 11, *see also*

24    footnote 2, supra.  Third, it is axiomatic that there exists a strong public interest in encouraging the

25    self-evaluation and self-correction of alleged violations of the U.S. trade embargo against Iran.

26

27    [7] Although some courts have declined to apply the self-critical analysis privilege, this is not
determinative.  "The determination whether particular evidence is privileged is a fact-specific

28    inquiry that must be made on a case-by-case basis …."  *Union Pacific R. Co. v. Mower*, 219 F.3d
1069, 1076 (citing Fed. R. Evid. 501).

1    Fourth, courts have recognized that the free flow of this type of information would be curtained if

2    discovery was permitted. *See Granger,* 116 F.R.D. at 509 ("chilling effect"); *O'Connor,* 86 F.R.D.

3    at 217-218 (incentives "pale considerably"). To open the results of self-critical analyses to

4    discovery effectively chills corporate decisions to conduct such analyses in the first instance. *Note,*

5    *The Privilege of Self-Critical Analysis,* 96 Harv. L. Rev. 1083, 1091-92 (1983) (cited by the Ninth

6    Circuit in *Dowling, supra,* 971 F.2d at 426).

7         Disclosure of the report described in the moving papers is barred by either the self-critical

8    analysis privilege or the mediation confidentiality privilege, so the motion should be denied.

9                              **IV.    CONCLUSION**

10        For each of the reasons set forth described above, Seagate LLC respectfully requests that the

11   Court deny Mr. Blaser's motion for judicial assistance pursuant to Section 1782, and grant Seagate

12   LLC such further relief as the Court deems proper.

13   Dated:  June 10, 2008                    BAKER & McKENZIE LLP

14

15                                        By

16                                           Michael N. Westheimer
                                             Attorneys for Seagate Technology LLC
17

18

19

20

21

22

23

24

25

26

27

28