1   JEFFER, MANGELS, BUTLER & MARMARO LLP
    PAUL L. WARNER (Bar No. 54757)
2   Two Embarcadero Center, Fifth Floor
    San Francisco, California 94111-3824
3   Telephone:    (415) 398-8080
    Facsimile:    (415) 398-5584
4
    PRYOR CASHMAN LLP
5   JAMIE M. BRICKELL
    JUERGEN R. OSTERTAG
6   410 Park Avenue
    New York, New York 10022
7   Telephone:    (212) 421-4100
    Facsimile:    (212) 326-0806
8
    Attorneys for Applicant Hans-Dieter Blaser
9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12                  SAN JOSE DIVISION

13  CASE NO.    5:08-mc-80009-JW HRL

14  **IN RE APPLICATION OF HANS-DIETER**     **REPLY MEMORANDUM OF POINTS AND**
    **BLASER FOR JUDICIAL ASSISTANCE**        **AUTHORITIES IN FURTHER SUPPORT**
15  **PURSUANT TO 28 U.S.C. SECTION 1782**    **OF APPLICATION OF HANS-DIETER**
                                             **BLASER FOR JUDICIAL ASSISTANCE**
16                                           **PURSUANT TO 28 U.S.C. SECTION 1782**

17                                           Date:    July 1, 2008
                                             Time:    10:00 a.m.
18                                           Dept:    25th Floor
                                             Judge:   Magistrate Judge Howard R. Lloyd
19

20

21

22

23

24

25

26

27

28

JMBM | Jeffer Mangels
Butler & Marmaro LLP

1

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF RELEVANT FACTS ....................................................................1

ARGUMENT................................................................................................................5

    A.    Blaser Is Entitled to this Judicial Assistance ...........................................5

    B.    Seagate LLC Fails to Establish a Valid Reason for the Court to Not Exercise Its Discretion..................................................................................................6

    C.    The Discovery Sought is Relevant ..........................................................6

    D.    Seagate LLC's Mediation Privilege Argument is a Red Herring ...........................7

    E.    The Self-Critical Analysis Privilege Does Not Apply.............................................9

CONCLUSION............................................................................................................10

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PRINTED ON

RECYCLED PAPER

743283v1

- i -

REPLY MEMO OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Dowling v. American Hawaii Cruises, Inc.* 971 F.2d 423, 426
    (9th Cir. 1992) ...................................................................................9, 10

*Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164, 1171-1172
    (C.D. Cal. 1998) ...................................................................................8

*Intel Corp. v. Advanced Micro Devices, Inc.,*
    542 U.S. 241, 256 (2004)...................................................................6

*Microsoft Corp. v. Suncrest Enterprise,* 2006 U.S. Dist. LEXIS 21269, *6-7 (N.D. Cal.
    2006) ...................................................................................8

*Peterson v. Chesapeake & Ohio Ry.*, 1986 U.S. Dist. LEXIS 31043, *7-8 (W.D. Mich.
    1986) ...................................................................................9

*U.S. v. Union Pacific Railroad Co.*, 2007 U.S. Dist. LEXIS 40178,
    *17 (E.D. Cal. 2007) ...................................................................................8

**CODES AND STATUTES**

United States Code 28 §1782 ...................................................................................1, 5, 6

United States Code 50 §1701 et seq. ...................................................................................2

United States Code 18 §371 ...................................................................................3

*Passi*

Code of Federal Regulation 31 §§560 et seq. ...................................................................................2

Code of Federal Regulation 15 §746.7 ...................................................................................2

Civil Local Rule 6-11(a) ...................................................................................8

Federal Rule of Civil Procedure 26 ...................................................................................8

Federal Rule of Evidence 408...................................................................................8

California Commercial Code § ...................................................................................4

United States Code 31 § 3727 ...................................................................................9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JMBM | Jeffer Mangels
Butler & Marmaro LLP

1

**PRELIMINARY STATEMENT**

2    As Hans-Dieter Blaser (hereinafter "Blaser") previously submitted, and as further

3    discussed below, the application for judicial assistance pursuant to 28 U.S.C. § 1782 should be

4    granted.  Blaser has unequivocally satisfied the statutory factors under 28 U.S.C. § 1782:  Seagate

5    Technology LLC ("Seagate LLC"), the person from whom discovery is sought herein, can be found

6    in this district; the documents sought herein are being requested solely for use in the action pending

7    in the German labor court (hereinafter, the "German Action"); and this application is being made by

8    Blaser, who, as the plaintiff in the German Action, is an "interested person."

9

**STATEMENT OF RELEVANT FACTS**

10    Seagate LLC attempts to distract the Court with assertions of privilege, which are

11    both misplaced and misapplied.  As set forth in the accompanying declaration of Lutz Schorler, the

12    proceedings in the U.S. were only initiated in order to obtain and use certain documents in the

13    German labor court action that were submitted to the U.S. authorities or used by Seagate

14    Technology within the framework of its voluntary report.  The documents sought in these

15    proceedings will be admitted in the German labor court action on the basis of their submission

16    without further review.

17    As attorney Schorler explains in his accompanying declaration, the litigation in

18    Germany has its origin in two separate letters of dismissal sent on June 29 2007.  In one letter,

19    Seagate Technology GmbH terminated Blaser's employment without notice.  In the other letter,

20    Seagate LLC also terminated Blaser's employment without notice.  Both letters were signed by Mr.

21    Charles C. Pope - on behalf of Seagate Technology GmbH as Managing Director, and on behalf of

22    Seagate LLC as Executive Vice President & Chief Financial Officer.  (Schorler Reply Declaration,

23    ¶ 4.)

24    Blaser filed actions claiming unfair dismissal based on both letters of dismissal

25    before the labor court of Munich under German procedural rules.  The proceeding against Seagate

26    Technology GmbH is pending under file number 31 Ca 9078/07; the proceeding against Seagate

27    LLC was filed, but the complaint later withdrawn, under file number 31 Ca 9079/07.  (Id. at ¶¶ 5,

28    18.)

Jeffer Mangels
Butler & Marmaro LLP

JMBM

1    Attorney Schorler also sent a letter on July 5, 2007 to both Seagate Technology

2  GmbH and Seagate LLC, indicating that he had been retained to represent Blaser and requesting a

3  reason for these terminations.  Seagate LLC did not reply to this letter.  (Id. at ¶ 6.)  Seagate

4  Technology GmbH's attorney (Zimmer) explained in a letter dated July 20, 2007 as follows:

5           The notice of immediate termination is based, above all, on the strong
         suspicion of a grave violation of contractual duties in connection with
6           export regulations as well as on the instruction, proven and even
         conceded by your client, to conceal a business trip in Seagate-internal
7           reporting and accounting procedures with the purpose of not revealing
         the destination of the trip.  (Id. at ¶ 6.)

8

9    In a letter dated August 1, 2007, attorney Schorler notified Seagate attorney Zimmer

10  that Blaser had information that Seagate LLC had submitted a voluntary report to the authorities and

11  expressed the suspicion that the voluntary report had been submitted in order to counter emerging

12  rumors about possible violations of boycott regulations by Seagate.  Attorney Schorler specifically

13  requested whether Blaser's name was mentioned or referred to in any way in this voluntary report.

14  When he did not receive a reply to the August 1 letter, Schorler wrote another letter dated August

15  14, 2007 to Seagate Technology GmbH requesting whether Blaser was mentioned by Seagate in the

16  voluntary report.  Again, he did not receive any reply.  Id. at ¶ 8.

17    In the course of the proceedings against unfair dismissal, Zimmer, in a brief dated

18  August 24, 2007 filed on behalf of Seagate Technology GmbH, told the labor court in Munich as

19  follows:

20    The Defendant is the German affiliate of Seagate Technology LLC, a U.S. company.

21  Seagate is by far the world market leader in the design, manufacture and marketing of hard

22  disk drives.

23    Due to their affiliation with the U.S. parent company all Seagate companies

24  worldwide have to adhere to U.S. export control regulations.  This includes the so-called

25  Iranian Transactions Regulations (in particular 31 C.F.R §§ 560 et seq.), the Export

26  Administration Regulations (in particular 15 C.F.R. Section 746.7) and the International

27  Emergency Economic Powers Act (in particular Section 50 U.S.C. §§ 1701 et seq.).  Under

28  these regulations a total embargo regarding Iran has been in effect for many years.

JMBM | Jeffer Mangels
Butler & Marmaro LLP

1    Accordingly U.S. companies and their affiliates are prohibited from trading with Iranian

2    companies.     Importing products into Iran by way of agents ("resellers") is prohibited as

3    well.

4         Even traveling to Iran may be considered a deed to prepare a criminal act (see

5    Section 18     U.S.C. 371).

6    U.S. law provides for drastic sanctions against companies involved in such violations

7    against these export regulations.  These include:

8              - criminal proceedings on the part of responsible bodies

9                   - withdrawal of trade licenses

10                   - additional export restrictions for the company/the group

11                   - civil penalties/monetary fines.

12        As far as civil penalties are concerned, they are basically unlimited.  Although there

13   was a   limit of $11,000 "per violation" at the time (nowadays $50,000), there is no

14   definition for   what is meant by "violation."  Therefore the shipment of each and every hard

15   disk can        already represent a "violation," which would render the potential fines

16   infinitely high.

17   These sanctions do not only pertain to U.S. companies and their foreign affiliates.  Rather,

18   even companies from third countries that do not have a U.S. parent company may be

19   affected by such sanctions…. All the aforementioned sanctions, but in particular the loss of

20   the company's trade license and the export restrictions, could dramatically impair the welfare

21   of the Seagate Group.  Not only would such sanctions harm the reputation of the world

22   market leader in hard drives, substantially weakening its market position, but could also

23   threaten the very existence of the company, since exports are a large part of its business.

24        (Id. at ¶¶ 9, 10, 11, 12, 13, 14, 16.)

25        In his rejoinder dated September 3, 2007 to the Munich labor court, attorney Schorler

26   explained that Seagate LLC might have to adhere to U.S. laws regarding export controls, but that

27   this was not the case as far as the defendant (Seagate Technology GmbH), a company registered in

28   Germany, was concerned.  Ultimately, in his October 17, 2007 reply to the labor court in Munich,

JMBM | Jeffer Mangels
Butler & Marmaro LLP

1    Zimmer conceded that the issue whether U.S. embargo rules apply to German affiliates of U.S.

2    corporations was not relevant; what mattered was that Seagate Technology GmbH, as a subsidiary

3    of the Seagate Group, was forced to comply with the parent's wishes. Id. at ¶ 17.

4            In the court hearing on December 5, 2007, the adversaries agreed that no

5    employment relationship existed between Blaser and Seagate LLC. The complaint against Seagate

6    LLC was therefore withdrawn. Id. at ¶ 18. In the litigation against Seagate Technology GmbH, the

7    Munich labor court pronounced a partial judgment on January 16, 2008. In this partial judgment,

8    the court held that the employment relationship had not been dissolved on the basis of the

9    termination without notice. Zimmer, on behalf of Seagate Technology GmbH, lodged an appeal

10   against this partial judgment. Id. at ¶ 19.

11           The main reason cited by Seagate Technology GmbH for terminating Blaser's

12   employment is the allegation that he violated U.S. laws on export controls. Zimmer claimed that as

13   a result the parent company was threatened with criminal proceedings by responsible bodies, loss of

14   trade license, additional export restrictions for the group and civil penalties/monetary fines in

15   significant amounts. Id. at ¶ 20. Such reasoning presupposes that U.S. laws on export controls

16   (boycott regulations) do indeed exist and are indeed applicable to the German Seagate Technology

17   GmbH. If they exist and are applicable to German affiliates, and if such U.S. regulations contain

18   drastic sanctions, Seagate LLC as the parent company can only avoid such drastic sanctions by

19   delivering a voluntary report. Thus, if U.S. export regulations were indeed violated, this practically

20   automatically triggers a voluntary report by the parent company. If, by contrast, such regulations

21   were not violated, a voluntary report is not required.

22           Thus, the extent to which Blaser's termination is actually based on a violation of U.S.

23   embargo regulations and the extent to which Zimmer's allegations on behalf of Seagate Technology

24   GmbH before the labor court in Munich, in particular in his August 24, 2007 brief, are correct, it is

25   necessary to demonstrate to the labor court - both the trial court and the court of appeals - whether

26   Seagate LLC as the parent company submitted a voluntary report and whether reference was made

27   to Blaser in that report. If the parent company did not submit such a voluntary report, it would

28   contradict its own line of arguments, established by Seagate Technology GmbH to give a reason for

JMBM    Jeffer Mangels
Butler & Marmaro LLP

1    its termination.

2            Seagate's voluntary report, and other documents submitted to the U.S. authorities

3    together with the voluntary report, would be introduced by Blaser into the proceedings as an

4    appendix to a brief and thus would be used in further German proceedings. Id. at ¶ 22. In this

5    connection, it is irrelevant how Blaser obtained such documents. Only when the court decides on

6    the issue in connection with which the documents were introduced, will the court evaluate the

7    relevance of these documents. Thus, contrary to Zimmer's statement in his declaration, relevancy is

8    not a prerequisite for admission. It is therefore also not required to announce to the labor court in

9    advance that the documents will be submitted. Id. at ¶ 22.

10            Seagate's opposition papers correctly point out that, under § 142 ZPO [German Code

11    of Civil Procedure], a civil court (including labor courts) may order the disclosure of documents in

12    possession of one of the parties. Thus, the adversary, too, can be subject to such a disclosure

13    obligation. Such a disclosure cannot be forced. However, in its weighing of evidence, the court is

14    free to weigh the refusal of one of the parties to comply with such an order to submit documents

15    disadvantageously against the party concerned.

16                            **ARGUMENT**

17        A.    **Blaser Is Entitled to this Judicial Assistance**

18            Seagate LLC's argument that this Court lacks the authority to grant Blaser's motion

19    for judicial assistance pursuant to 28 U.S.C. § 1782 ("Section 1782") is without merit. In fact,

20    Blaser has satisfied the three requirements necessary to authorize this Court to grant judicial

21    assistance: (1) Seagate LLC, the party from whom discovery is sought, resides in and can be found

22    in this district; (2) the documents sought herein are expressly "for use" in a proceeding before a

23    foreign tribunal – namely, to serve as evidence in the German Action regarding the basis for

24    Blaser's termination by Seagate Technology GmbH; and (3) Blaser is unequivocally an interested

25    party. See 28 U.S.C. § 1782(a).

26            While it is now established that Seagate LLC may be located in this district, Seagate

27    LLC attempts to confuse the issue on the other two straightforward, established facts. Specifically,

28    Seagate LLC ignores the simple fact that Blaser is seeking this discovery for the unequivocal

1    purpose of using the documents in the German Action. In their submission in opposition to the

2    instant motion (at page 9), Seagate LLC argues that the documents requested "would not be

3    considered by the German court," but the Zimmer Declaration upon which Seagate relies is directly

4    contradicted by the accompanying Schorler Declaration, which explains why it would be

5    considered. See Schorler Reply Decl. ¶¶ 21, 22, 26.

6           Moreover, while Seagate LLC acknowledges that Section 1782 expressly provides

7    that an order may be sought in this Court pursuant to either a letter rogatory issued, or a request

8    made, by a foreign or international tribunal, or (2) an application of any interested person, Seagate

9    LLC ignores the latter, instead taking issue with the fact that Blaser brings this action "solely" as an

10   "interested person," and without the authority or involvement of a foreign tribunal. 28 U.S.C. §

11   1782(a). See Seagate LLC Memo. P&A, p. 8. Yet the fact that the statute itself distinguishes

12   between the two alternatives indicates that both are not requirements. See 28 U.S.C. § 1782(a).

13   Moreover, Section 1782 plainly states that an order may be sought in this Court pursuant to an

14   application of any interested person. Id. Blaser is decidedly an "interested person" in the German

15   Action, where he is the plaintiff. See *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241,

16   256 (2004). Thus, Blaser has established that this Court has the authority to grant the judicial

17   assistance sought herein.

**B.    Seagate LLC Fails to Establish a Valid Reason for the Court to Not Exercise Its Discretion**

20          While Seagate LLC acknowledges that the framework for determining a Section

21   1782 motion is set forth in *Intel Corp. v. Advanced Micro Devices, Inc.,* it attempts to avoid the

22   conclusion that the Intel factors weigh in favor of granting the judicial assistance sought herein by

23   baldly asserting that the documents in question are irrelevant and subject to the privileges of

24   mediation and self-critical analysis. These arguments are unsupported and misplaced.

**C.    The Discovery Sought is Relevant**

26          Seagate LLC's criticism of Blaser's characterization of the documents, which Blaser

27   has never seen, can best be described as ironic. Given that Blaser has never been granted access to

28   the requested documents, it is counter-intuitive that Blaser would be able to accurately describe

Jeffer Mangels
Butler & Marmaro LLP

JMBM

their nature and content.  Moreover, without providing any detail or explanation, Seagate LLC asks

the Court to accept its own blanket characterization that the documents are wholly irrelevant to the

German Action.   In fact, Blaser has unequivocally stated the relevance of the discovery sought:  To

the extent that the documents indicate any basis for the termination of Blaser by Seagate

Technology GmbH, they are relevant to his cause of action in Germany, in which, as Seagate LLC

expressly acknowledged "the sole issue is the evidentiary basis for his termination."  See Seagate

Memo. of P&A, p. 13:28, 14:1-2.  See also Blaser Memo. of P&A, p.1:9 – 2:4, 3:14-17, 5:13 –

6:17; Schorler Decl. ¶¶ 18, 19, 20, 21.

Moreover, Seagate LLC misleadingly asserts that the documents "would not be

considered by the German court," relying on Zimmer's Declaration that "[b]ased on the nature of

the German proceeding, I do not see how the documents Mr. Blaser is seeking in the U.S. District

Court could possibly be admitted into evidence by the German court, because they are irrelevant to

that action" and that "the documents that Mr. Blaser describes in his motion to the U.S. District

Court cannot be for use in the German proceeding."  See Seagate Memo. P&A, p. 9; Zimmer Decl.

¶¶ 2, 3. Zimmer bases this determination upon the fact that the German Action has been presented

before the Labor Court Munich, which has already decided the immediate dismissal.  See Zimmer

Decl. ¶ 3.  Yet Seagate LLC ignores the fact that an appeal of that decision is currently pending.

According to the German rules of procedure, the documents sought herein would likely be received

by the German court upon review.  Indeed, to that end, the question Seagate LLC presents as

relevance is more so a question of admissibility, which this Court respectfully is not in the position

to determine.

### D.    Seagate LLC's Mediation Privilege Argument is a Red Herring

Seagate LLC makes much of the fact that the discovery sought in this application

includes documents that were presented or used at a mediation.  As a result, Seagate LLC claims

that the documents are privileged and must not be disclosed.  See Seagate Memo. P&A, p. 14-16.

This purported reliance on a mediation privilege is a red herring.  The privilege is inapplicable here.

Seagate LLC improperly conflates mediation discussions with documents prepared

outside and independent of the mediation context, thereby misapplying the basis and scope of the

1    mediation privilege.  As interpreted by the courts, the mediation privilege is intended to establish

2    confidentiality and trust between disputants in order to facilitate successful alternative dispute

3    resolution.  See *Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164, 1171-

4    1172 (C.D. Cal. 1998).  Accordingly, this privilege precludes the discovery of items concerning a

5    mediation – including statements made during a mediation as well as documents submitted in

6    connection with a mediation.  See *Folb*, 16 F. Supp. 2d 1164; *U.S. v. Union Pacific Railroad Co.*,

7    2007 U.S. Dist. LEXIS 40178, *17 (E.D. Cal. 2007).

8            Indeed, the local rules adopted by this Court provide that "the contents of the written

9    Mediation Statements, anything that happened or was said, any position taken, and any view of the

10   merits of the case formed by any participant in connection with any mediation" shall not be

11   disclosed. Civil L.R. 6-11(a).  Notably, this Court has concluded that questions that do not ask an

12   individual to reveal the substance of any communications made in preparation for and during the

13   mediation do not impinge upon the mediation privilege, and therefore were permissible.  See

14   *Microsoft Corp. v. Suncrest Enterprise*, 2006 U.S. Dist. LEXIS 21269, *6-7 (N.D. Cal. 2006).  In

15   the present case, Blaser seeks discovery of documents that, while presented in the context of a

16   mediation, were not mediation documents.  Rather, the documents sought were presumably

17   prepared for – and filed with – the United States government, in a context that was unrelated to the

18   mediation where the documents came to light insofar as Blaser is concerned.

19           Furthermore, as this Court instructed in *Folb*, the "general rule is that the public is

20   entitled to every person's evidence and that testimonial privileges are disfavored."  *Folb v. Motion

21   Picture Industry Pension & Health Plans*, 16 F. Supp. 2d 1164, 1171 (C.D. Cal. 1998), aff'd, 216

22   F.3d 1082 (9th Cir. 2000); see also *U.S. v. Union Pacific Railroad Co.*, 2007 U.S. Dist. LEXIS

23   40178, *16 (E.D. Cal. 2007) (ordering disclosure of documents that were not prepared in

24   connection with a formal mediation or court-ordered settlement conference, which were likely to

25   lead to the discovery of other admissible evidence within the meaning of Federal Rule of Civil

26   Procedure 26 and Federal Rule of Evidence 408).  Seagate LLC is attempting to shield the

27   documents sought herein on the basis that they were presented during a mediation; however, the

28   local rules of this Court further provide that the mediation privilege is not intended to preclude

1    disclosures that are otherwise required by the law.  Civil L.R. 6-11(b)(5).

2        **E.**    **The Self-Critical Analysis Privilege Does Not Apply**

3            Seagate LLC's assertion of the self-critical analysis privilege is likewise misapplied

4    and unsupported.  For one thing, Seagate LLC has failed to meet its burden under the test articulated

5    by the Ninth Circuit in *Dowling v. American Hawaii Cruises, Inc.*  971 F.2d 423, 426 (9th Cir.

6    1992) (holding that no privilege of self-critical analysis protects routine internal corporate reviews

7    of matters related to safety concerns).  As Seagate LLC noted, the party asserting the privilege of

8    self-critical analysis is required to demonstrate that:  (1) the information sought to be protected must

9    have been prepared with the expectation that it would be kept confidential, and the material has in

10   fact been kept confidential; (2) the information must be the result of a critical self-analysis

11   undertaken by the party seeking protection; (3) there must be a "strong public interest in preserving

12   the free flow of the type of information sought;" and (4) the information must be the type whose

13   flow would be curtailed if discovery were permitted.  Id. at 426.

14           Seagate LLC ignores the fact that the self-critical analysis test requires that "no

15   document will be accorded a privilege unless it was prepared with the expectation that it would be

16   kept confidential, and has in fact been kept confidential."  Id.; See also *Peterson v. Chesapeake &*

17   *Ohio Ry.*, 1986 U.S. Dist. LEXIS 31043, *7-8 (W.D. Mich. 1986) (refusing to apply the self-critical

18   analysis privilege to an investigative report where the report was not "performed with the

19   expectation that the analysis [would] remain confidential" and in fact the investigative report had

20   not been kept confidential).  In fact, as the *Peterson* court noted, "[i]t would make little sense to

21   allow material to be protected from discovery that was not intended to be protected by those

22   originating it, or which has subsequently been divulged by those privileged to know it to those not

23   privileged."  *Peterson v. Chesapeake,* 1986 U.S. Dist. LEXIS 31043, *8-9.

24           This is precisely where Seagate LLC fails to satisfy the test.  While Seagate LLC

25   claims that Mr. Schorler "expressly alleges" that the company has endeavored to preserve the

26   confidentiality of the report, in fact, Schorler's initial declaration states only that "[t]he Seagate

27   Report was never made known to Blaser in any way prior to the UK Mediation.  In fact, as of today,

28   Blaser has never been granted access to the Seagate Report, nor was he advised on any allegations

PRINTED ON

RECYCLED PAPER

743283v1

JMBM    Jeffer Mangels
Butler & Marmaro LLP

1  set forth therein with respect to his actions pertaining to a violation of any boycott regulations."  See

2  Seagate Memo. P&A, p. 17; Schorler Decl. ¶ 10.  Such statements hardly establish that Seagate

3  LLC prepared the document with the expectation that it be kept confidential, nor do those

4  statements indicate that the documents have in fact been kept confidential.  To the contrary, the very

5  fact that the Seagate Report was allegedly shared with a former Seagate UK employee during a

6  mediation indicates that it has not been kept confidential.  See Schorler Decl. ¶ 8.

7       Moreover, in *Dowling* the Ninth Circuit held that the district court abused its

8  discretion by applying a privilege of self-critical analysis where the pre-accident safety reviews

9  were prepared voluntarily, and thus were not protected by a privilege of self-critical analysis.

10  *Dowling*, 971 F.2d 423, 427.  The *Dowling* court noted that where a self-evaluation report is

11  prepared voluntarily, the underlying concern of forcing a party to turn over self-damning

12  assessments that the government has required it to prepare does not exist.  Id. at 426-27.  Here, the

13  Seagate Report was allegedly prepared voluntarily by Seagate LLC, and was not kept confidential,

14  and thus should not be protected by the self-critical analysis privilege.

15       Finally, it is worth noting that with the exception of the *Dowling* decision, Seagate

16  LLC relies upon articles suggesting that the law should provide for a self-critical analysis privilege,

17  as well as case law outside of this jurisdiction, all at least twenty (20) years old.  See Seagate

18  Memo. P&A, p. 16-18.  Seagate LLC has cited no authority which mandates applying such a theory

19  to this case.

20  **CONCLUSION**

21       For the foregoing reasons, Blaser's Application for Judicial Assistance pursuant to

22  28 U.S.C. § 1782 for discovery from Seagate of the Seagate Report  and related documents should

23  be granted in its entirety.

24  DATED:  June 19, 2008        JEFFER, MANGELS, BUTLER & MARMARO LLP
                           PAUL L. WARNER

25

26

27                 By: /s/ Paul L. Warner
                     PAUL L. WARNER (Bar No. 54757)
               Attorneys for Applicant HANS-DIETER BLASER

28

Jeffer Mangels Butler & Marmaro LLP

JMBM

1   JEFFER, MANGELS, BUTLER & MARMARO LLP
    PAUL L. WARNER (Bar No. 54757)
2   Two Embarcadero Center, Fifth Floor
    San Francisco, California  94111-3824
3   Telephone:    (415) 398-8080
    Facsimile:    (415) 398-5584
4

5   PRYOR CASHMAN LLP
    JAMIE M. BRICKELL
6   JUERGEN R. OSTERTAG
    410 Park Avenue
7   New York, New York 10022
    Telephone:    (212) 421-4100
8   Facsimile:    (212) 326-0806

9   Attorneys for Applicant Hans-Dieter Blaser

10                 UNITED STATES DISTRICT COURT

11               NORTHERN DISTRICT OF CALIFORNIA

12                     SAN JOSE DIVISION

13                                          CASE NO. 5:08-mc-80009-JW HRL

14  IN RE APPLICATION OF HANS-DIETER        REPLY DECLARATION OF LUTZ
    BLASER FOR JUDICIAL ASSISTANCE          SCHORLER IN FURTHER SUPPORT OF
15  PURSUANT TO 28 U.S.C. SECTION 1782      APPLICATION OF HANS-DIETER
                                            BLASER FOR JUDICIAL ASSISTANCE
16                                          PURSUANT TO 28 U.S.C.   1782

17
                                            Date:        July 1, 2008
18                                          Time:        10:00 a.m.
                                            Courtroom: 25th Floor
19                                          Judge:       Magistrate Judge Howard R. Lloyd

20          I, Lutz  Schorler herewith declare as follows:

21          1.      I am a German attorney and partner of Schorler & Suetterlin, a German law firm (the

22  "German Firm").  I submit this Declaration in support of the accompanying Application of Hans-

23  Dieter Blaser ("Blaser") for Judicial Assistance pursuant to 28 U.S.C. §1782 to obtain discovery

24  from Seagate Technology.  Each of the matters set forth herein is based on my own knowledge

25  except as to those matters alleged on information and belief, which I believe to be true.

26          2.      I am submitting this declaration to respond to the June 6, 2008 statement of Mark

27  Zimmer, whose statement does not fully reflect the course of the court proceedings that took place

28  in Germany or the statements by the parties during the relevant trial.  Mr. Zimmer leaves essential

JMBM  Jeffer Mangels
      Butler & Marmaro llp

1    allegations made by the parties unmentioned. Furthermore, Mr. Zimmer's explanations concerning

2    German procedural law are incorrect.

3         3.    The proceedings in the United States were only initiated in order to obtain and use

4    certain documents submitted to the U.S. authorities or used by Seagate Technology within the

5    framework of its voluntary report in the German labor court action. The documents sought in these

6    proceedings will be admitted in the German labor court action on the basis of their submission

7    without further review.

8         4.    The litigation in Germany has its origin in two letters of dismissal sent in two

9    separate letters on June 29 2007. In one letter, Seagate Technology GmbH, Messerschmittstr. 4,

10   Munich, Germany, terminated Mr. Blaser's employment without notice. In another letter, Seagate

11   Technology LLC, 920 Disc Drive, Scotts Valley, CA 95066, also terminated Mr. Blaser's

12   employment without notice. Both letters were signed by Mr. Charles C. Pope - on behalf of Seagate

13   Technology GmbH as Managing Director, and on behalf of Seagate Technology LLC as Executive

14   Vice President & Chief Financial Officer.

15        5.    On July 5, 2007, Mr. Blaser filed actions claiming unfair dismissal based on both

16   letters of dismissal before the labor court of Munich under German procedural rules. The

17   proceeding against Seagate Technology GmbH is pending under file number 31 Ca 9078/07; the

18   proceeding against Seagate Technology LLC was filed under file number 31 Ca 9079/07.

19        6.    In order to further prepare the complaints, I sent a letter on the same day - July 5,

20   2007 - to both Seagate Technology GmbH and Seagate Technology LLC indicating that I was

21   retained to represent my client and requesting a reason for these terminations by July 11, 2007.

22   Seagate Technology LLC did not reply to this letter. Mr. Zimmer wrote a letter dated July 20, 2007

23   on behalf of Seagate Technology GmbH providing the reason for the termination without notice as

24   follows: "The notice of immediate termination is based, above all, on the strong suspicion of a

25   grave violation of contractual duties in connection with export regulations as well as on the

26   instruction, proven and even conceded by your client, to conceal a business trip in Seagate-internal

27   reporting and accounting procedures with the purpose of not revealing the destination of the trip."

28

PRINTED ON
RECYCLED PAPER

743176v1

7.      In a letter dated August 1, 2007, I contacted Mr. Zimmer again and reported that especially in informed circles the termination without notice of Mr. Blaser' employment had been met by particular astonishment. Everyone wondered what was behind this step. I informed Mr. Zimmer that we were in receipt of information according to which the U.S. parent company (Seagate Technology LLC) had submitted a voluntary report to the authorities. I expressed the suspicion that it had been submitted in order to counter emerging rumors about possible violations of boycott regulations as early as possible. One of the essential measures for preparing such a voluntary report was likely to be the notice of termination pronounced against Mr. Blaser. I therefore asked Mr. Zimmer - requesting a reply by August 10, 2007 - whether Mr. Blaser's name was mentioned or referred to in any way in this voluntary report. I asked to be notified in what way Mr. Blaser had anything to do with such a voluntary report.

8.      I did not receive a reply to my August 1 letter. I therefore wrote another letter dated August 14, 2007 to Seagate Technology GmbH requesting that I be advised by August 22, 2007 whether Mr. Blaser was mentioned by Seagate in the voluntary report. To this letter, too, I did not receive any reply.

9.      In the course of the proceedings against unfair dismissal, Mr. Zimmer, in a brief dated August 24, 2007 filed on behalf of Seagate Technology GmbH, told the labor court in Munich as follows:

> "The Defendant is the German affiliate of Seagate Technology LLC, a U.S. company. Seagate is by far the world market leader in the design, manufacture and marketing of hard disk drives.

10.     Due to their affiliation with the U.S. parent company all Seagate companies worldwide have to adhere to U.S. export control regulations. This includes the so-called Iranian Transactions Regulations (in particular 31 C.F.R §§ 560 et seqq.), the Export Administration Regulations (in particular 15 C.F.R. Section 746.7) and the International Emergency Economic Powers Act (in particular Section 50 U.S.C. §§ 1701 et seq). Under these regulations a total embargo regarding Iran has been in effect for many years. Accordingly U.S. companies and their affiliates are prohibited from trading with Iranian companies. Importing products into Iran by way of agents ("resellers") is prohibited as well.

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels
Butler & Marmaro LLP

743176v1

- 3 -

1      11.    Even traveling to Iran may be considered a deed to prepare a criminal act (see

2  Section 18 U.S.C. 371).

3      12.    U.S. law provides for drastic sanctions against companies involved in such violations

4  against these export regulations.  These include

5              - criminal proceedings on the part of responsible bodies

6              - withdrawal of trade licenses

7              - additional export restrictions for the company/the group

8              - civil penalties/monetary fines.

9      13.    As far as civil penalties are concerned, they are basically unlimited.  Although there

10  was a limit of $11,000 "per violation" at the time (nowadays $ 50,000), there is no definition for

11  what is meant by "violation."  Therefore the shipment of each and every hard disk can already

12  represent a "violation", which would render the potential fines infinitely high.

13      14.    These sanctions do not only pertain to U.S. companies and their foreign affiliates.

14  Rather, even companies from third countries that do not have a U.S. parent company may be

15  affected by such sanctions.  Case in point: In mid-2005 Petrom GmbH International Trade, a

16  company headquartered in Munich, was sentenced to pay a fee of US $ 134,000.00 and lost its

17  export privileges for 20 years (!) (no transactions with U.S. products). This is reflected in a

18  notification by the [German] Federal Agency for Foreign Trade dated April 27, 2006 (cf. under

19  www.bfai.de).

20      15.    All goods with "U.S. origin" are subject to strict export prohibitions.  This includes

21  not only goods made in the U.S., but also goods manufactured abroad containing a certain share of

22  U.S. merchandise, software or technology (cf. www.bfai.de for further details).

23      16.    All the aforementioned sanctions, but in particular the loss of the company's trade

24  license and the export restrictions, could dramatically impair the welfare of the Seagate Group.  Not

25  only would such sanctions harm the reputation of the world market leader in hard drives,

26  substantially weakening its market position, but could also threaten the very existence of the

27  company, since exports are a large part of its business."  (Answer to the Complaint, page 2-3.)

28

JMBM | Jeffer Mangels
Butler & Marmaro LLP

17.    In my rejoinder dated September 3, 2007 to the Munich labor court, I explained that the U.S. parent company (i.e. (Seagate Technology LLC) might have to adhere to U.S. laws regarding export controls. This is however not the case as far as the defendant (Seagate Technology GmbH), a company registered in Germany, is concerned. In turn, in his October 17, 2007 reply to the labor court in Munich, Mr. Zimmer commented by claiming that the issue whether U.S. embargo rules apply to German affiliates of U.S. corporations was not relevant; what mattered was that Seagate Technology GmbH, as a subsidiary of the Seagate Group, was forced to comply with the parent's wishes.

18.    In the court hearing on December 5, 2007, the adversaries agreed that no employment relationship existed between Mr. Blaser and Seagate Technology LLC. The complaint against Seagate Technology LCC was therefore withdrawn. In the litigation against Seagate Technology GmbH, the Munich labor court pronounced a partial judgment on January 16, 2008. In this partial judgment, the court held that the employment relationship had not been dissolved on the basis of the termination without notice.

19.    Mr. Zimmer, on behalf of Seagate Technology GmbH, lodged an appeal against this partial judgment.

20.    The main reason cited by Seagate Technology GmbH for terminating Mr. Blaser's employment is the allegation that he violated U.S. laws on export controls. Mr. Zimmer claims that as a result the parent company was threatened with criminal proceedings by responsible bodies, loss of trade license, additional export restrictions for the group and civil penalties/monetary fines in significant amounts. Such reasoning presupposes that U.S. laws on export controls (boycott regulations) do indeed exist and are indeed applicable to the German Seagate Technology GmbH. If they exist and are applicable to German affiliates, and if such U.S. regulations contain drastic sanctions, Seagate Technology LLC as the parent company can only avoid such drastic sanctions by delivering a voluntary report. Thus, if U.S. export regulations were indeed violated, this practically automatically triggers a voluntary report by the parent company. If, by contrast, such regulations were not violated, a voluntary report is not required.

21.     Thus, the extent to which Mr. Blaser's termination is actually based on a violation of U.S. embargo regulations and the extent to which Mr. Zimmer's allegations on behalf of Seagate Technology GmbH before the labor court in Munich, in particular in his August 24, 2007 brief, are correct, it is necessary to demonstrate to the labor court - both the trial court and the court of appeals - whether Seagate Technology LLC as the parent company submitted a voluntary report and whether reference was made to Mr. Blaser in that report. If the parent company did not submit such a voluntary report, it would contradict its own line of arguments, established by Seagate Technology GmbH to give a reason for its termination.

22.     Seagate's voluntary report, and other documents submitted to the U.S. authorities together with the voluntary report, would be introduced by Mr. Blaser into the proceedings as an appendix to a brief and thus would be used in further German proceedings. In this connection, it is irrelevant how Mr. Blaser obtained such documents. Only when the court decides on the issue in connection with which the documents were introduced, will the court evaluate the relevance of these documents. Thus, contrary to Mr. Zimmer's statement in his declaration, relevancy is not a prerequisite for admission. It is therefore also not required to announce to the labor court in advance that the documents will be submitted.

23.     It must be noted for accuracy's sake that the labor court was not advised that the documents surrounding the voluntary report would be submitted. To the extent that our previous submission to this Court states otherwise, it is inaccurate. The German labor court was informed that in all likelihood Seagate Technology submitted a voluntary report to the U.S. authorities, without announcing that such documents would be submitted to the labor court. Therefore, it must be clarified that logically the court did not indicate any interest in the submission of such documents. Rather, the court's interest in such documents lies in its ability to weigh the facts completely.

24.     Mr. Zimmer points out correctly that, under § 142 ZPO [German Code of Civil Procedure], a civil court (including labor courts) may order the disclosure of documents in possession of one of the parties. Thus, the adversary, too, can be subject to such a disclosure obligation. Such a disclosure cannot be forced. However, in its weighing of evidence, the court is

JMBM | Jeffer Mangels Butler & Marmaro LLP

PRINTED ON RECYCLED PAPER

743176v1

1    free to weigh the refusal of one of the parties to comply with such an order to submit documents

2    disadvantageously against the party concerned.

3        25.    If, as in this case, the documents are written in a foreign language, the court,

4    provided it understands the language concerned, may dispense with ordering a translation (Federal

5    Court decision, cf. FamRZ 88,827/828). Otherwise, in accordance with § 144 ZPO, the court may

6    order the documents to be translated *ex officio* (Federal Court decision, cf. NJW 1987, 591). The

7    fact that the voluntary report is in English is thus irrelevant. The use of such a voluntary report

8    before a German court is not restricted by the fact that it is in English.

9        26.    The court may order the submission of documents within the meaning of § 142 ZPO

10   on its own initiative or one of the parties may request such submission. However, this may not

11   involve so-called "exploratory soundings." According to the German rules of civil procedure,

12   purely exploratory obtaining of evidence is inadmissible if it serves to explore facts or to seek

13   disclosure that alone might enable that party to claim certain facts and then substantiate them.

14   Therefore, it is decisive whether arbitrary allegations are made as a "shot into the blue", without any

15   tangible indication for the existence of a certain fact (Federal Court decision NJW 1995, 2111).

16   Actual indications have to be proven (Federal Court decision, NJW 1991, 2707). Accordingly, it is

17   necessary to name the document, its content (not the exact text), the name and address of the

18   addressee as well as the time it was created. In the absence of such substantive description of the

19   document, the request represents inadmissible exploratory obtaining of evidence, with which the

20   court does not get involved. However, the court will admit documents in the proceedings the

21   submission of which the court itself could not order but which - as is the case here - are otherwise

22   obtained and submitted by one of the parties. It is therefore necessary that Seagate Technology

23   LLC is required in the U.S. proceedings to submit documents in connection with such a voluntary

24   report in order to demonstrate that a termination of employment occurred for preventative purposes.

25   If Seagate Technology LLC did not submit such a voluntary report, it is proof of the fact that in

26   reality no violation against U.S. boycott regulations exists. In that case, however, the termination of

27

28

PRINTED ON
RECYCLED PAPER

743176v1

JMBM | Jeffer Mangels | Butler & Marmarouo

1    Mr. Blaser's employment by the German affiliate is unfounded and therefore invalid.

2         Pursuant to Section 28 U.S.C. §1746, I declare under plenty of perjury under the laws of the

3    United States of America that the foregoing is true and correct.

4                                  Executed on June 19, 2008

5                                  In Munich, Federal Republic of Germany

6

7                                  Lutz Schorler

8                                  Attorney at Law, Partner
                                    Schorler & Suetterlin

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JMBM  Jeffer Mangels
Butler & Marmaro llp

PRINTED ON
RECYCLED PAPER

743176v1

1   JEFFER, MANGELS, BUTLER & MARMARO LLP
    PAUL L. WARNER (Bar No. 54757)
2   Two Embarcadero Center, Fifth Floor
    San Francisco, California  94111-3824
3   Telephone:    (415) 398-8080
    Facsimile:    (415) 398-5584
4

5   PRYOR CASHMAN LLP
    JAMIE M. BRICKELL
6   JUERGEN R. OSTERTAG
    410 Park Avenue
7   New York, New York 10022
    Telephone:    (212) 421-4100
8   Facsimile:    (212) 326-0806

9   Attorneys for Applicant Hans-Dieter Blaser

10              UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                    SAN JOSE DIVISION

13                                        CASE NO. 5:08-mc-80009-JW HRL

14  **IN RE APPLICATION OF HANS-DIETER**      **PROOF OF SERVICE RE:**
    **BLASER FOR JUDICIAL ASSISTANCE**        **REPLY IN SUPPORT OF APPLICATION**
15  **PURSUANT TO 28 U.S.C. SECTION 1782**    **FOR JUDICIAL ASSISTANCE PURSUANT**
                                              **TO 28 U.S.C. SECTION 1782**
16

17                                            Date:       July 1, 2008
                                              Time:       10:00 a.m.
18                                            Courtroom: 25th Floor
                                              Judge:      Magistrate Judge Howard R. Lloyd
19

20

21

22

23

24

25

26

27

28

PRINTED ON
RECYCLED PAPER

743407v1

PROOF OF SERVICE  CASE NO. CV 08-80009
MISC

1                            **PROOF OF SERVICE**

2 **STATE OF CALIFORNIA, CITY AND COUNTY OF SAN FRANCISCO**

3      I am employed in the City and County of San Francisco, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  Two Embarcadero Center,
4 5th Floor, San Francisco, California 94111.

5      On June 19, 2008 I served the document(s) described as

6      1.    REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION OF HANS-DIETER BLASER FOR JUDICIAL ASSISTANCE PURSUANT TO
7 28 U.S.C. SECTION 1782;

8      5.    REPLY DECLARATION OF LUTZ SCHORLER IN FURTHER SUPPORT OF APPLICATION OF HANS-DIETER BLASER FOR JUDICIAL ASSISTANCE PURSUANT TO
9 28 U.S.C. SECTION 1782;

10      in this action by placing the true copies thereof enclosed in sealed envelopes addressed as
11 follows:

12 Michael N. Westheimer, Esq.
Baker & McKenzie LLP
660 Hansen Way
13 Palo Alto, CA  94304-1044

14 ☒    (BY ELECTRONIC SERVICE TRANSMISSION) via U.S. District Court, Northern Division, Case Management/Electronic Case Files, Filing System.  I caused a true copy of
15        the above referenced document(s) to be filed by Notice of Electronic filing generated by the Court's CM/ECF filing system, pursuant to the Court's Local Rules to the addresses of the
16        addressee(s) by use as identified and maintained therein.

17

18      Executed on June 19, 2008 at San Francisco, California.

19 ☒    (FEDERAL)   I declare that I am employed in the office of a member of the bar of this court
20              at whose direction the service was made.

21

22                            _____

23                               Angela Pereira

24

25

26

27

28

JMBM | Jeffer Mangels Butler & Marmaro LLP

PRINTED ON RECYCLED PAPER